*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0409P (6th Cir.)
File Name: 00a0409p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee,*

 *v.*

No. 99-5357

MICHAEL ANGELO FLOWAL,
 *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 96-00047—William O. Bertelsman, District Judge.

Argued: September 13, 2000

Decided and Filed: December 11, 2000

Before: NORRIS and DAUGHTREY, Circuit Judges;
WISEMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Roger N. Braden, THE LAWRENCE FIRM, Cincinnati, Ohio, for Appellant. David Bunning, ASSISTANT UNITED STATES ATTORNEY, Covington,

---

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

Kentucky, for Appellee.  **ON BRIEF:** Roger N. Braden, THE LAWRENCE FIRM, Cincinnati, Ohio, for Appellant. David Bunning, ASSISTANT UNITED STATES ATTORNEY, Covington, Kentucky, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

———————

## OPINION

———————

WISEMAN, District Judge. Defendant-Appellant Michael Angelo Flowal appeals from the judgment entered on March 11, 1999, in the United States District Court for the Eastern District of Kentucky, which sentenced him to life in prison without possibility of parole for possession with intent to distribute five point two (5.2) kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).  Flowal argues that under *Bond v. United States*, 529 U.S. 334, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000), the government's search of his luggage at an airport terminal violated his Fourth Amendment rights. He also argues that under *Apprendi v. New Jersey*, ___ U.S. ___, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the district court erred in not letting the jury determine the weight of the cocaine he possessed.

The search of Flowal's luggage was not unlawful under *Bond*.  However, the district court erred in not allowing the jury to determine beyond a reasonable doubt the weight of the cocaine Flowal possessed with intent to distribute.  Hence, the case is **REVERSED** and **REMANDED**.

## I.

On May 16, 1996, between 10:00 and 11:15 am, Defendant-Appellant Michael Angelo Flowal was passing through the Greater Cincinnati–Northern Kentucky Airport on his way from Los Angeles, California, to Fort Wayne, Indiana. About this time, Lieutenant Gayle Blackburn, a drug task force officer, received word about a passenger who was

that he possessed 4.997 kilograms of cocaine, Flowal would only be subject to the penalty provisions of § 841(b)(1)(B), which prescribe a minimum of ten years and a maximum of life.  Furthermore, if the government could only prove that Flowal possessed less than 500 grams of cocaine, he would only face up to thirty years imprisonment under § 841(b)(1)(C).  According to Justice Thomas' reasoning, these are three different crimes, with three differing elements (weight of drugs), and with three substantially different penalty structures.  Accordingly, the prosecution is only entitled to the punishment provisions of the crime whose elements it has proved to a jury beyond a reasonable doubt. It has yet to prove the weight of the cocaine in Flowal's possession to a jury, and the jury's findings thus far neither require nor allow a mandatory penalty of life imprisonment without the possibility of release.

## IV.

Though the search of Flowal's luggage did not violate his Fourth Amendment rights under *Bond*, he was entitled to have a jury determine beyond a reasonable doubt the weight of the drugs he possessed.  On appeal, however, Flowal has argued that the drugs he possessed weighed 4.997 kilograms.  If the parties agree to sentencing under 21 U.S.C. § 841(b)(1)(B), which applies to drugs that weigh more than 500 grams but less than five kilograms, the district court need not submit the issue of the weight of the drugs to the jury, but instead can exercise its discretion and sentence Flowal under that provision.  Hence, we **REVERSE** the district court judge's determination of the weight of the drugs and **REMAND** the case for further proceedings not inconsistent with this opinion.

Justice Thomas' concurring opinion in *Apprendi*, which argues for a broader rule than that adopted by the majority, is informative on this issue:

[A] "crime" includes every fact that is by law a basis for imposing or increasing punishment (in contrast with a fact that mitigates punishment). Thus, if a legislature defines some core crime and then provides for increasing punishment of that crime upon a finding of some aggravating factor–of whatever sort, including the fact of a prior conviction–the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime. Similarly, if the legislature, rather than creating grades of a crime, has provided for setting the punishment of a crime based on some fact–such as a fine that is proportional to the value of the stolen goods–that fact is also an element. . . . One need only look to the kind, degree, or range of punishment to which the prosecution is by law entitled for a given set of facts. Each fact necessary for that entitlement is an element.

120 S. Ct. at 2368-9. (Thomas, J., concurring opinion, Scalia, J., joining). In Flowal's case, the indictment itself, as submitted to the jury, specified the amount of drugs alleged to be in Flowal's possession. Ultimately, to prove that Flowal was guilty of a crime under § 841(b)(1)(A), the government needed to convince a jury beyond a reasonable doubt that Flowal possessed more than five kilograms of cocaine, just as alleged in the indictment. If the government could only prove

---

in this case cannot stand. A jury did not make a special finding as to the weight of the drugs. Furthermore, Flowal did not receive the statutory minimum for simple possession. Instead, he received a penalty of life without possibility of release that was mandatory under 21 U.S.C. § 841(b)(1)(A), but that would not have been mandatory under the other relevant provisions. Put another way, the district court gave Flowal a mandatory maximum sentence that might not have actually been mandatory or even permissible had the district court properly submitted the issue of the drug's weight to the jury.

on his way from Los Angeles to Fort Wayne and who matched a drug courier profile.

Lieutenant Blackburn, Officer Bauerle, also a drug task force officer, and Gary Curry, a Special Agent for the DEA, located two pieces of luggage matching the claim numbers 945197 and 198 at the airline baggage area. The luggage belonged to Flowal. Both pieces of luggage were locked. The officers shook the luggage to see if there was movement and pushed the sides of the luggage. They did not discover anything suspicious.

Lieutenant Blackburn stayed with the luggage in the baggage claim area while Officer Bauerle and Agent Curry returned to the airport terminal to locate Flowal. Officer Mike Evans, another drug task force officer, arrived in the luggage area with a drug-sniffing dog. The dog did not react or indicate that the luggage contained drugs. Officer Bauerle and Agent Curry knew this before talking to Flowal, but did not inform Flowal of the dog's reaction.

According to Officer Bauerle's testimony, Flowal started down the boarding ramp to board the airplane, and Officer Bauerle and Agent Curry followed and stopped him. Officer Bauerle identified himself to Flowal and told Flowal that he and Agent Curry had seen Flowal's luggage and that it looked suspicious. Officer Bauerle asked Flowal if he had packed the bags, to which Flowal responded he had. He then requested to search Flowal's luggage. Flowal consented. Officer Bauerle asked if Flowal had the key to the luggage. Flowal did not, but he again consented to the search of the luggage so long as the officers did not damage it.

Officer Evans searched Flowal's luggage and found five bundles of what appeared to be narcotics. Approximately a minute later, Lieutenant Blackburn returned to the terminal and arrested Flowal. Flowal was indicted on June 12, 1996, for possession with intent to distribute "approximately five point two (5.2) kilograms of cocaine." Flowal pled not guilty, but a jury found Flowal guilty of possession with intent to distribute cocaine.

On May 16, 1996, a police officer had found the weight of the cocaine to be approximately 5.2 kilograms with its packaging. Also, between May 16, 1996, and July 16, 1996, Andrea Michiels, a chemist with the DEA, had weighed the cocaine with its packaging and had concluded its gross weight was 5.354 kilograms. Michiels suspected her weight determination differed because she had a more accurate scale or because the officer did not weigh the drugs with the four evidence envelopes that were affixed with evidence stickers, as she had. She testified she weighed the cocaine by first weighing the entire package, by then weighing each brick of cocaine, and by then emptying the package and weighing the empty package. She determined the net weight of the cocaine to be 5.008 kilograms. She also noted she used about eight grams of the cocaine as a sample for analysis. She determined the weight of the sample by reweighing the remaining cocaine after the sample had been removed. On September 24, 1996, Brian Maloney, another DEA forensic chemist, determined the weight of the cocaine was 4.997 kilograms. He testified he weighed the bag and the powder and then weighed the bag by itself, though he did not factor in the amount removed by Michiels for testing.

The district court found Flowal's cocaine weighed 5.000 kilograms and, pursuant to 21 U.S.C. § 841(b)(1)(A), sentenced Flowal to life in prison without the possibility of release. Given that Flowal had two prior felony convictions, the sentence of life without release was mandatory. On appeal, we found that instead of making a reliable conclusion on the basis of the evidence before it, the district court had arbitrarily based the cocaine's weight on the amount Flowal had intended to possess. *U.S. v. Flowal*, 163 F.3d 956, 961 (6th Cir. 1998). We remanded the case to the district court for re-sentencing. *Id.*

On remand, Michiels was the only witness called. The district court made the following findings:

The Court finds the weight of the cocaine was 5,008 grams by a preponderance of the evidence. Therefore,

§ 841(b)(1)(A). The government is also correct in noting that a repeat offender who possesses 4.997 kilograms of cocaine can receive life imprisonment under 21 U.S.C. § 841(b)(1)(B). However, such a penalty is not mandatory under the latter provision. This difference is significant in this case because the trial judge's determination of the weight of the drugs took away any discretion in terms of imposing a shorter sentence. It is not a foregone conclusion that the trial judge would have sentenced Flowal to life without the possibility of release if a jury had determined the drugs weighed 4.997 kilograms. In fact, if the jury had determined that the drugs weighed less than 500 grams, a life sentence would not have even been an option under 21 U.S.C. § 841(b)(1)(C). The judge's determination effectively limited the range of applicable penalties and deprived Flowal of the opportunity to receive less than life imprisonment without the possibility of release.[3]

---

[3] The Eighth Circuit has recently considered the effect of *Apprendi* on 21 U.S.C. § 841. Although it had previously held that the quantity of drugs under § 841 was a sentencing factor that could be decided by a judge, the Eighth Circuit, in light of *Apprendi*, has noted that a judge can only impose penalties that fall within the statutory range authorized by the jury's verdict. *United States v. Aguaya-Delgado,* 220 F.3d 926, 2000 WL 988128 (8th Cir. 2000). In *Aguaya-Delgado*, the court upheld a conviction under § 841 because the trial judge had sentenced the defendant to the absolute statutory minimum that was applicable regardless of drug quantity. The court explained that such a penalty was appropriate because it fell within the range specified for the crime for which the jury had convicted the defendant. The Eighth Circuit reiterated the same principle in *United States v. Sheppard.* 219 F.3d 766 (8th Cir. 2000). The court again upheld a conviction under § 841, in this case because the indictment had alleged the drug type and quantity and because, according to a special finding, the jury unanimously found beyond a reasonable doubt that the defendant had possessed the quantity of drugs charged in the indictment. *Id.* at 769. Again, though, the court noted that a judge's decision to impose a statutory minimum irrespective of drug quantity could fall within the constitutional limits of *Apprendi. Id.* at 739 n.3. In both cases, however, the Eighth Circuit noted that it is improper for a judge to determine any facts other than a prior conviction that would increase the penalty range beyond that applicable to the crime for which the jury has convicted the defendant.

Unlike the sentences in *Aguaya-Delgado* and *Sheppard*, the sentence

§ 841(b)(1)(A). If he possessed less than five kilograms but more than 500 grams, he could be sentenced from ten years to life. 21 U.S.C. § 841(b)(1)(B). Finally, if he possessed less than 500 grams, he could be imprisoned as long as thirty years but would not face a statutory minimum. 21 U.S.C. § 841(b)(1)(C). Because the amount of the drugs at issue determined the appropriate statutory punishment, a jury should have determined the weight of the drugs beyond a reasonable doubt.[2]

The government argues the penalty imposed in this case does not exceed the "prescribed statutory maximum" as required before *Apprendi* takes effect. According to the government, the only dispute is whether the drugs weighed 4.997 kilograms or more than five kilograms, and life imprisonment is an appropriate penalty if Flowal possessed either amount. As explained, life imprisonment without release is mandatory for Flowal under 21 U.S.C.

---

[2]Under 21 U.S.C. § 841(b)(1)(A)-(C), drug offenses that result in death or bodily injury also receive increased sentencing ranges. We have already determined that, pursuant to *Apprendi*, the question of whether death or bodily injury has resulted from a drug offense must be proved beyond a reasonable doubt to the finder of fact. In *United States v. Rebmann*, ___ F.3d ___, 2000 WL 1209271, 2000 Fed. App. 0282P (6th Cir. 2000), the defendant pled guilty to distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and faced up to twenty years imprisonment. The district court, however, found by a preponderance of the evidence that a death had resulted from the distribution. Therefore, pursuant to the provisions of 21 U.S.C. § 841(b)(1)(C), the district court increased the sentence to life. We reversed, noting that 21 U.S.C. § 841 calls for a factual determination of whether the distribution of drugs causes death and that this factual determination significantly impacts the maximum penalty. Although the defendant had waived her right to a jury trial as part of her plea agreement, she had not waived her right to have this element of the offense proved beyond a reasonable doubt to the trier of fact. As we noted, it would have violated the constitutional underpinnings of the defendant's right to trial to allow a defendant who pleads guilty to physical distribution to be sentenced to life upon a district court's finding, only by a preponderance of the evidence, that a death had resulted from the charged crime. The holding today reaffirms the logic of *Rebmann*: a fact that increases the applicable statutory penalty range for a particular crime must be proved beyond a reasonable doubt to the trier of fact.

---

the sentence in this case is imposed to promote respect for the law, provide just punishment, and act as a deterrent to future criminal activity. The Court will further find it was more than 5000 grams beyond a reasonable doubt, although that's probably a superfluous finding.

The court again sentenced Flowal to the mandatory maximum penalty of life in prison without the possibility of release. This appeal followed.

## II.

Flowal argues that *Bond v. United States*, 529 U.S. 334, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000), forbids government agents from seizing someone's luggage after manipulating it in an exploratory manner. According to Flowal, because Officer Bauerle and Agent Curry picked up Bond's luggage from the conveyor belt, shook the luggage, and pushed the sides of the luggage in a manner constituting an illegal search, this Court should suppress the incriminating evidence found therein.

In *Bond*, a border patrol agent boarded a bus in Texas to check the immigration status of its passengers. 120 S.Ct. at 1463. As he exited the bus, the agent squeezed the soft luggage the passengers had placed in the overhead storage space and felt a "brick-like" object in one of the bags. *Id*. After Bond admitted the bag was his and consented to have the bag searched, the agent discovered a "brick" of illegal drugs. *Id*. at 1463. Bond argued the search was illegal under the Fourth Amendment, but the district court and the court of appeals refused to suppress the evidence on those grounds. *Id*. The Supreme Court agreed with Bond, noting that Bond had specifically attempted to preserve his privacy by using an opaque bag and by placing the bag over his seat. *Id*. at 1465. The Court also noted that even though a bus passenger probably expects his bag to be handled by other passengers or bus employees, he does not reasonably expect that anyone will feel or manipulate the bag in an exploratory manner. *Id*. Ultimately, the Court found the agent's physical manipulation

of the passenger's carry-on luggage violated the Fourth Amendment's proscription against unreasonable searches. *Id.* at 1463.

The government asserts that Flowal's expectation of privacy was much lower than Bond's because Flowal turned his luggage over to the custody and control of the airline. Without resolving that point, the search of Flowal's luggage was not unconstitutional under *Bond*. The officers investigated Flowal's luggage because he matched the drug courier profile, not because they had felt something suspicious in it. In other words, unlike the agent in *Bond*, the officers in this case had a reasonable belief that the luggage could contain contraband before ever touching it. In fact, neither the officers' prodding of the luggage nor the drug-sniffing dog revealed anything suspicious, hence the reason the officers approached Flowal and obtained his consent to search the bags.[1] Given that Flowal matched the drug courier profile and that he consented to the ultimate search of his luggage, the officers had a reasonable basis for the search independent of any physical prodding or manipulation of the bags.

### III.

Flowal next argues a jury should have decided the weight of the drugs. As noted above, the trial judge found the weight of the drugs was 5008 grams by a preponderance of the evidence and in any case was more than 5000 grams beyond a reasonable doubt. The trial judge made his decision before the recent Supreme Court case of *Apprendi v. New Jersey*, ___ U.S. ___, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Flowal argues that *Apprendi* now requires the submission of the weight question to the jury and that failure to do so is error.

---

[1] Because the government did not raise the issue, the Supreme Court did not consider the effect of consent in *Bond*.

In *Apprendi*, the defendant entered a plea agreement for possession of a firearm for an unlawful purpose. 120 S.Ct. at 2352. The maximum penalty for that crime was ten years, but the state hate crime statute allowed the trial judge to enhance the penalty if he found by a preponderance of the evidence that the defendant committed the crime with the purpose of intimidating a person or group on the basis of race. *Id.* at 2351. At trial and on appeal, the defendant argued the trial judge should have submitted the issue of racial bias to a jury. *Id.* at 2352. The trial court and the appellate court disagreed. *Id.* at 2352-3. The Supreme Court, however, reversed. *Id.* at 2354. As the Court explained, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362-3.

The Court had earlier announced the principle underlying the *Apprendi* rule in *Jones v. United States*, 526 U.S. 227 (1999). In *Jones*, the Court interpreted a criminal statute so as to avoid the difficult and significant constitutional problems posed by removing from the jury the finding of facts that will determine a statutory sentencing range. *Id.* at 248. The Court, however, did announce the principle that became law in *Apprendi*: "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n.6.

The indictment in Flowal's case specifically charged Flowal with possession of 5.2 kilograms of cocaine in violation of 21 U.S.C. § 841(b)(1)(A). The ultimate effect of the trial judge's finding in this case is the same as the effect of the judge's finding in *Apprendi*: the trial judge made a factual finding that determined the appropriate length of the criminal sentence. More specifically, a finding as to the weight of the drugs determined the range of penalties that would apply to Flowal. Given Flowal's two prior felony convictions, life imprisonment without parole was mandatory if he possessed five or more kilograms of cocaine. 21 U.S.C.