UNITED STATES of America,
Plaintiff–Appellee,

v.

Eric COVINGTON, James Klopfer,
Defendants–Appellants.

Nos. 98–6300, 98–6302, 99–6243.

United States Court of Appeals,
Sixth Circuit.

March 21, 2001.

Before MERRITT, KRUPANSKY, and BOGGS, Circuit Judges.

MERRITT, Circuit Judge.

This is an appeal by two codefendants, Eric Covington and James Klopfer, convicted after a jury trial in a marijuana conspiracy case. Both defendants raise numerous evidentiary issues challenging their convictions as well as sentencing issues. In addition, both defendants filed motions shortly before oral argument raising questions about the validity of their sentences in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (any fact that increases a sentence beyond the statutory maximum must be charged and found by the jury beyond a reasonable doubt), which both parties have briefed.

## I.

In late 1995, Tony Rademaker, the leader of the conspiracy at issue in this case, started a marijuana distribution ring in Kentucky. The entire conspiracy had 11 or 12 individuals over its life. Defendant Klopfer was initially brought on as a "delivery" person to replace a coconspirator, but Klopfer graduated to selling drugs over time. Defendant Covington then replaced Klopfer as the primary delivery person, transporting drugs between stash houses and delivering quantities to members of the conspiracy that they would then sell. Police raided Rademaker's house in August 1997 (Rademaker was not there) and arrested coconspirator Jack Hay when Hay arrived at the house. Police found only small amounts of marijuana in the house and 12 pounds in a car in the

garage. They also found $8200 in cash, as well as notes and other written material with names, phone numbers and other numbers that turned out to be quantities taken by certain conspiracy members.

Covington and Klopfer were indicted in January 1998 in Kentucky, along with five other codefendants, for conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. The evidence at trial consisted primarily of testimony by coconspirators who had entered into plea agreements with the government. At sentencing, there was extensive testimony about the amount of drugs attributable to defendants. Both defendants were given mandatory minimum sentences based in part on the amount of drugs distributed. Klopfer was sentenced to 210 months imprisonment and Covington to 120 months.

## II.

1. *Credibility Instruction.* Both defendants contend that they were prejudiced by the district court's failure to give a specific instruction about the drug use by coconspirators Dave Durso and Rick Hay and its effect on the credibility of their testimony at trial. The district court denied the request to give a specific instruction and gave general instructions on the jury's duty to determine witness motivation and credibility.

■ There is no *per se* rule governing the giving of an addict-informer instruction and the need for such an instruction depends on the circumstances of each case. *Scott v. Mitchell,* 209 F.3d 854, 882–83 (6th Cir.) (citing *United States v. Anderson,* Nos. 97–5352, 97–5382, 1998 WL 833701, at *4 (6th Cir.1998)), *cert. denied,* 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000); *United States v. Brown,* 946 F.2d 1191, 1195 (6th Cir.1991). A district court errs in failing to give a requested instruction when (1) the instruction is correct, (2) the instruction is not substantially covered by another instruction actually given and (3) not giving the instruction substantially impairs defendant's defense. *United States v. Sassak,* 881 F.2d 276, 279 (6th Cir.1989).

Both Rick Hay and Dave Durso admitted to drug addiction. They were both extensively cross-examined about their addictions by defense counsel. The district court found that they were not "typical" drug users and that their testimony was coherent and corroborated by physical evidence and the testimony of other witnesses. Accordingly, the court declined to give a special instruction and instead cautioned the jury about their testimony and gave the standard witness credibility instruction.

■ Although defendants' requested instruction was correct, it does not meet the other two criteria for giving an addict-informer instruction. The standard instruction about witness credibility and the judge's warning about Durso's and Hay's testimony substantially covered defendants' concerns. Lastly, the lack of the instruction did not prejudice defendants because the jury knew of their addiction based on the cross-examination by defense counsel and the judge's warning about their testimony. In addition, Durso's and Hay's testimony was not the only testimony to implicate defendants; their testimony was corroborated by the testimony of other non-addicted witnesses.

■ 2. *Application of Bribery Statute.* Defendants next contend that a recommendation by the government for reduced sentences for witness cooperation and truthful testimony at trial violates the federal bribery statute, 18 U.S.C. § 201(c)(2), and it was therefore error to deny their motion for a new trial based on that argument. This court has held that plea-bargained testimony does not violate the federal bribery statute. *United States v.*

*Ware,* 161 F.3d 414 (6th Cir.1998), *cert. denied,* 526 U.S. 1045, 119 S.Ct. 1348, 143 L.Ed.2d 511 (1999). Defendants concede this issue has been decided against them in this circuit but state that they have raised it to preserve any appeal to the Supreme Court or in the event the Supreme Court reverses the current law.

■ 3. *Prosecutorial Misconduct.* Defendant Covington contends that the government improperly vouched for and bolstered the testimony of government witnesses, thereby prejudicing his right to a fair trial. Covington contends that the government "vouched" for key witness and conspiracy leader, Tony Rademaker. Covington, however, "opened the door" by attacking the credibility of Rademaker during opening arguments. The government responded by asking questions to clarify the terms of the plea agreements. In the exchange at issue, Rademaker explained to the jury, in response to a question by the government, that he understood his plea agreement to say that if he cooperated and told the truth, the government would recommend that his mother [coconspirator Bonnie Hay] not receive any jail time and it would recommend the minimum sentence for him. Defense counsel did not object to this explanation. There is nothing in this exchange to indicate that the government was vouching for Rademaker. *See, e.g., United States v. Francis,* 170 F.3d 546, 550 (6th Cir.1999) (prosecutor may elicit testimony about the terms of a plea agreement and try to rebut attacks on witness credibility).

■ Covington also claims that during closing arguments, the government improperly used the words "I submit to you ..." several times when summarizing testimony for the jury. Covington contends that this phrase indicated to the jury that the statement is the prosecutor's personal opinion and it is therefore an improper "vouching" for the witness. We find nothing suggestive of personal opinion in the phrase "I submit." Covington then argues that it was improper for the prosecutor to tell the jury that certain witnesses were facing very long prison sentences if they lied. When read in context, the statements were not intended to "vouch" for the witnesses or mislead the jury. Any error in the government's phrasing is harmless when viewed in the context of the entire trial.

■ Covington also claims that the prosecutor engaged in improper bolstering when he referred to evidence that corroborated trial testimony that was uncovered by a federal agent, Tony Walls, who did not testify at trial. Bolstering occurs when the government implies that the witness's testimony is corroborated by evidence known to the government but not the jury. Covington's argument fails, however, because although Agent Walls did not testify, the physical evidence referred to was introduced into evidence through witnesses other than Agent Walls.

4. *Scope of Cross–Examination.* Defendant Covington next contends that the district court erred in allowing questioning of Brian Spaulding on redirect examination that went beyond the scope of cross-examination. On cross-examination by counsel for Klopfer, Brian Spaulding testified that he, Spaulding, had hired a man named Eddie Chambers to rob various known drug dealers in the Cincinnati area on the assumption that they would be carrying large amounts of cash. On redirect, the government asked Spaulding for the names of the other drug dealers he told Eddie Chambers to rob. Counsel for Covington objected but was overruled. Spaulding said he told Chambers to rob Covington because Covington was the "main collector" of drug money for conspiracy leader Tony Rademaker while Rademaker was in hiding. The trial court

refused to give a curative instruction and denied a request to excise all testimony about Eddie Chambers from the record.

■■■ The general rule states that the government may not introduce evidence against one defendant through a codefendant that it would not be able to get in another way. Here, defendant Klopfer's counsel, not the government, raised the matter. The government was permissibly following up on Klopfer's testimony. Furthermore, even if the question was improper, Covington was not prejudiced by the government's question because there is separate evidence in the record that Covington had collected drug money. Tr. Trans. of Bonnie Hay at 134–35, J.A. at 755–56. There is also ample testimony in the record that Covington was part of the conspiracy without this piece of evidence. Any error in questioning Spaulding about Covington's conduct was harmless. The exchange was brief, cumulative of other evidence already on the record and did not prejudice Covington's right to a fair trial.

■■■ 5. *Severance.* Covington then argues that he was prejudiced by the trial court's failure to grant his motion to sever his trial from that of Klopfer because Klopfer allegedly threatened coconspirator Brian Spaulding, who testified for the government. Covington claimed that if this information reached the jury, he would be prejudiced by association. However, the trial court ultimately granted Klopfer's motion to exclude the evidence and the jury never heard about the threat, thereby eliminating the basis for Covington's motion. Covington also contends in support of his motion for severance that, but for being tried with Klopfer, the jury would not have heard testimony about Covington collecting drug money on behalf of Rade-

maker, which Covington says unfairly prejudiced him. As explained above, this evidence against Covington came in separately through testimony by Bonnie Hay, so while Spaulding's testimony added to the evidence, it was not error to deny the motion to sever the trial based on the possibility that Klopfer might open the door to evidence that Covington collected drug money on behalf of the conspiracy.

■■■ 6. *Sufficiency of the Evidence.* Both defendants contend that there is insufficient evidence to support a conviction of conspiracy to distribute marijuana because the evidence against them comes mostly from uncorroborated testimony by coconspirators, it lacks credibility and cannot be used to support the convictions. This argument lacks merit because an accomplice's uncorroborated testimony may support a conviction for involvement in the conspiracy. *United States v. Sherlin,* 67 F.3d 1208, 1214 (6th Cir.1995). The evidence demonstrates that both Klopfer and Covington knew about an agreement to violate the drug laws and knew of, intended to join and participated in some way in advancing the goals of the conspiracy. Although we need not detail it here, a review of the trial transcript demonstrates that coconspirators Durso, Spaulding, Rademaker and the Hays testified at length about Klopfer and Covington's roles in the conspiracy.

■■■ 7. *Exculpatory Evidence.* Eleven months after the trial was over, Covington filed another motion for a new trial based the government's failure to turn over material in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[1] Covington claims the government failed to disclose a report and

---

1. Covington's appeal from the denial of the second motion for a new trial came after Covington's and Klopfer's appeals to this Court from the trial convictions were already filed and docketed. Accordingly, counsel for Covington filed a separate appeal, which was subsequently consolidated with the first two appeals.

letter showing that one of its witnesses, Dave Durso, a member of the conspiracy and a key witness for the government, had tested positive for cocaine use right before trial. Covington is not entitled to a new trial because, although the government failed to turn over the actual report, it did in fact give to defendants' counsel, on the first day of trial, a transcript of the show cause hearing held several days before trial which referenced the report. The trial court gave defendants a short recess to examine the transcript before Durso's testimony and counsel for Klopfer questioned Durso about the show cause hearing and the positive cocaine test. Neither counsel requested a continuance or further time to review the show cause transcript or to obtain the actual report before cross-examining Durso.

■■■ Reversal for a *Brady* violation is required only where there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different. *United States v. Mullins,* 22 F.3d 1365, 1371 (6th Cir.1994). Any failure to disclose the actual report to Covington did not cause the outcome of the trial to be different. Counsel for both defendants were well aware of Durso's drug problem at the time of trial and Durso was questioned about it extensively during his trial testimony. Even without the actual report showing failure of the drug test in evidence, the jury was well informed about Durso's drug habit.

8. *Sentencing.* While this consolidated appeal was pending, the Supreme Court announced its decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* announced two new important principles concerning the standard of proof required in certain sentencing situations. The first holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63. The second holds that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increases the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Id.* at 2368 (*quoting Jones v. United States,* 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

■■■ The *Apprendi* issue was raised by both defendants in separate motions after the briefs had been filed but before oral argument. Because new criminal rules are to be applied to all cases pending on direct review, we must apply *Apprendi's* holding to this consolidated appeal. *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Accordingly, at our request, the parties submitted supplemental briefing on the issue after oral argument. For the reasons that follow, we remand to the district court for resentencing of both defendants in light of *Apprendi.*

A single drug conspiracy count under 21 U.S.C. § 846 was brought against Covington and Klopfer for distribution of "a measurable amount of marijuana." As has been the practice in federal drug prosecutions prior to *Apprendi,* the indictment did not charge, nor did the jury find, the amount of marijuana attributable to defendants or whether the quantity was sufficient to increase the penalty to a mandatory minimum sentence. A person convicted under 21 U.S.C. § 846 "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the conspiracy," in this case, 21 U.S.C. § 841(a)(1). Section 841(a)(1) sets out the unlawful acts and subsection (b) prescribes the penalties, providing ascending penalties de-

pending on the establishment of certain facts, including recidivism, whether death or serious bodily injury resulted and the type and amount of drugs involved. No single maximum penalty or mandatory minimum is provided by § 841(b). With regard to marijuana, sections 841(b)(1)(A) and (B) apply to amounts of marijuana in excess of 100 kilograms or more. Section 841(b)(1)(D) applies to amounts of marijuana of less than 50 kilograms. Section 841(b)(1)(C) applies to quantities of marijuana of at least 50 but less than 100 kilograms.

We have held that *Apprendi* is triggered when a mandatory minimum penalty is based, at least in part, on the quantity of drugs possessed. *United States v. Flowal*, 234 F.3d 932 (6th Cir. 2000). *Flowal* held that "[a]ggravating factors, other than a prior conviction, that increase the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence, or from a lesser to a greater minimum sentence, are now [under *Apprendi*] elements of the crime to be charged and proved." *See United States v. Ramirez*, 242 F.3d 348 (6th Cir.2001) (pending publication). *Flowal* and *Ramirez* apply here. Any finding of marijuana quantities in excess of 49 kilograms increases the prescribed range of penalties to which defendants were exposed and is subject to the *Apprendi* rule. In the absence of a charge and a jury-determined quantity of marijuana, the appropriate statutory range should be that under section 841(b)(1)(D)—no more than five years.[2] *Accord United States v. Keeling*, 235 F.3d 533 (10th Cir.2000); *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir.2000); *United States v. Henderson*,

105 F.Supp.2d 523, 534 n. 13 (S.D.W.Va. 2000). Because both defendants were given mandatory minimum penalties, based at least in part of the quantity of marijuana attributed to them, the sentences were subject to the rule of *Apprendi.*

For these reasons, the convictions of Klopfer and Covington are affirmed, but their sentences are vacated and the case remanded to the district court for resentencing in accordance with the rule announced in *Apprendi*, as interpreted by *Flowal* and *Ramirez.*

---

2. 21 U.S.C. § 841(b)(1)(D) provides in relevant part:

> In the case of less than 50 kilograms of marijuana, ... such person shall ... be sentenced to a term of imprisonment of not more than 5 years.... If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years....