**UNITED STATES of America,**

**v.**

**Cornelius SINGLETON, Defendant.**

**No. Crim. 00–0105(PLF).**

United States District Court,
District of Columbia.

Dec. 4, 2001.

---

John Dominguez, Assistant U.S. Attorney, Washington, DC, for Government.

James Lyons, Kellogg Williams & Lyons, Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant Cornelius Singleton's motion to hold 21 U.S.C. § 841(b)(1)(A) and (B) and 21 U.S.C. § 848(b) unconstitutional on their face and on his separate motion to dismiss the Section 848(b) allegation from the indictment on the grounds that (1) it fails to allege specifically that any one predicate drug charge involved at least 300 times the quantity of a substance described in 21 U.S.C. § 841(b)(1)(B), and (2) the indictment improperly charges the element of leadership role. At a motions hearing on September 24, 2001, the Court heard argument on these and other motions. Upon consideration of the arguments presented by the parties in their briefs and at the hearing, the Court denies defendant's motion to hold 21 U.S.C. § 841(b)(1)(A) and (B) and 21 U.S.C. § 848(b) unconstitutional on their face and

denies the motion to dismiss the Section 848(b) allegation from the indictment.

## I.  BACKGROUND

On March 16, 2000, a grand jury in the United States District Court for the District of Columbia returned a one-count indictment charging defendant Singleton and four other individuals with unlawfully, knowingly and willfully combining, conspiring, confederating and agreeing to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in the amount of five kilograms or more, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii), all in violation of 21 U.S.C. § 846. After two superseding indictments, returned on April 20, 2000 and on March 29, 2001, Mr. Singleton continued to face only a single count of conspiracy to possess and distribute cocaine.

On August 9, 2001, a grand jury returned a third superseding indictment charging Mr. Singleton with an additional crime: unlawfully, knowingly and intentionally engaging in a continuing criminal enterprise ("CCE") by unlawfully, knowingly and intentionally engaging in violations of 21 U.S.C. §§ 841(a)(1), 843 and 846, all in violation of 21 U.S.C. § 848. According to the indictment, the predicate violations for the CCE charge are (1) the conspiracy charged in Count One; (2) many of the Overt Acts (specifically, Overt Acts 1, 3, 4, 5, 6, 7 and 8) listed in Count One; and (3) various other narcotics conspiracies in the District of Columbia, Tennessee, Georgia, Maryland and New York, all of which are said to be a part of the charged continuing criminal enterprise.

## II.  DISCUSSION

### A.  Section 841(b)(1)(A) and (B)

██ Defendant Singleton argues that the Court should hold 21 U.S.C.

§ 841(b)(1)(A) and (B) unconstitutional on their face in light of the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. at 490, 120 S.Ct. 2348. Prior to this decision, the D.C. Circuit—indeed, all of the federal circuits—considered drug quantity under Section 841(b)(1)(A) and (B) to be a sentencing factor that the judge would decide at sentencing by a preponderance of the evidence and not an element of the offense that must go to the jury and be proved beyond a reasonable doubt. *See United States v. Williams,* 194 F.3d 100, 102 (D.C.Cir.1999) (citing *United States v. Lam Kwong–Wah,* 966 F.2d 682, 685 (D.C.Cir.1992)). After *Apprendi,* however, courts can no longer treat drug quantity as a sentencing factor because in a particular case the judge could find by a mere preponderance that a sufficient quantity of drugs was involved to trigger the statutory minimums and maximums set forth in Section 841(b)(1)(A) or (B), thereby resulting in a prison term beyond the 20–year statutory maximum set forth in Section 841(b)(1)(C). The question of drug quantity therefore now is treated as an element of the offense that must be decided by the jury beyond a reasonable doubt. *See United States v. Webb,* 255 F.3d 890, 896 (D.C.Cir.2001).

In *United States v. Buckland,* 259 F.3d 1157, 1165–68 (9th Cir.), *reh'g en banc granted,* 265 F.3d 1085 (2001), the Ninth Circuit held that in light of the Supreme Court's decision in *Apprendi,* Section 841(b)(1)(A) and (B) must be struck down as unconstitutional.[1] The court in *Buckland* reasoned that the structure of Section 841 and its legislative history support the conclusion that drug quantity is not an element of the offense but rather is a sentencing factor that Congress intended to be determined by the sentencing judge by a preponderance of the evidence. *See id.* at 1162–65. The panel concluded that to submit the matter of drug quantity to the jury—as now required by *Apprendi*—would violate the express congressional intent behind the statute, the intent to treat drug quantity as a sentencing factor. *See id.* at 1165–66. Based on what it concluded was Congress's clear intent, the panel in *Buckland* struck down Section 841 as unconstitutional in light of *Apprendi.*

■ This Court does not agree with the result reached in *Buckland* or with the reasoning of the panel. This Court concludes that Section 841(b)(1)(A) and (B) are constitutional under *Apprendi* and that drug quantity can be considered as if it were an element of the offense that is put to the jury. To the extent that the reasoning of the panel in *Buckland* retains any value as persuasive precedent, the Court agrees with the five circuits that have reached the opposite conclusion. *See United States v. McAllister,* 272 F.3d 228 (4th Cir.2001); *United States v. Cernobyl,* 255 F.3d 1215, 1219 (10th Cir.2001); *United States v. Martinez,* 253 F.3d 251, 256 n. 6 (6th Cir.2001); *United States v. Brough,* 243 F.3d 1078, 1079–80 (7th Cir.2001); *United States v. Slaughter,* 238 F.3d 580, 582–83 (5th Cir.2000). These courts ac-

---

1. Rehearing *en banc* was ordered on September 14, 2001. In the order granting rehearing *en banc,* the Ninth Circuit directed that *Buckland* "shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the *en banc* court." 265 F.3d 1085 (9th Cir. 2001). The case was heard by the *en banc* court and submitted on September 26, 2001.

knowledge that while drug quantity traditionally was treated as a sentencing factor, nothing in the legislative history of Section 841 indicates that Congress clearly intended that the judge and only the judge determine drug quantity at sentencing by a preponderance of the evidence. It is equally likely that the congressional purpose behind the inclusion of drug quantities in Section 841 was to create a scheme in which larger amounts of drugs yielded longer sentences regardless of who decided the amount and under what burden. *See United States v. Vazquez*, 271 F.3d 93 (3d Cir.2001) (*en banc*) (Becker, C.J., concurring). Treating quantity as an element of the offense therefore does not conflict with this broader legislative intent.

Moreover, the statute at issue in *Apprendi* contained an explicit provision requiring that the judge find by a preponderance of the evidence those facts that would enhance the sentence beyond the statutory maximum. *See Apprendi v. New Jersey*, 530 U.S. at 491, 120 S.Ct. 2348. By contrast, Section 841 contains no equivalent provision—a significant omission in light of the procedural protections of *Apprendi*. *See United States v. McAllister*, 272 F.3d 228, 232–33. As Judge Easterbrook has written:

> If Congress had specified that only judges may make the findings required by § 841(b), or that these findings must be made by a preponderance of the evidence, then § 841 would create a constitutional problem. But the statute does not say who makes the findings or which party bears what burden of persuasion. Instead the law attaches effects to facts, leaving it to the judiciary to sort out who determines the facts, under what burden. It makes no constitutional difference whether a single subsection covers both elements and penalties, whether these are divided across multiple subsections (as § 841 does), or even whether

they are scattered across multiple statutes.... *Apprendi* holds that the due process clauses of the fifth and fourteenth amendments make the jury the right decisionmaker ..., and the reasonable doubt standard the proper burden, when a fact raises the maximum lawful punishment. How statutes are drafted, or implemented, to fulfil that requirement is a subject to which the Constitution does not speak.

*United States v. Brough*, 243 F.3d at 1079; *see also United States v. Cernobyl*, 255 F.3d at 1219; *United States v. Slaughter*, 238 F.3d at 582–83.

Although the D.C. Circuit has not squarely addressed this issue, several of the court's decisions suggest that our Circuit—like the Fourth, Fifth, Sixth, Seventh and Tenth—would conclude that Section 841(b)(1)(A) and (B) are constitutional. With respect to Section 841(b)(1)(A) and (B), the D.C. Circuit has held that "the Government must state the drug type and quantity in the indictment, prove the relevant drug quantity to the jury, and prove the relevant drug quantity beyond a reasonable doubt," clearly indicating that after *Apprendi* courts in this jurisdiction should treat drug quantity as if it were an element of the offense, not a sentencing factor. *United States v. Webb*, 255 F.3d at 896 (citing *United States v. Fields*, 242 F.3d 393, 396 (D.C.Cir.2001) ("*Fields I*")); *see also United States v. Fields*, 251 F.3d 1041, 1043 (D.C.Cir.2001) ("*Fields II*"). The position adopted by this Circuit is consistent with the majority of the circuits that have addressed this issue and not with the analysis in *Buckland*. Based on the foregoing, the Court denies defendant Singleton's motion to hold Section 841(b)(1)(A) and (B) facially unconstitutional.

### B. Section 848(b)

Defendant Singleton has filed two motions addressing Count Two of the superseding indictment which charges Mr. Singleton with operating a continuing criminal enterprise in violation of 21 U.S.C. § 848.

#### 1. *Apprendi Argument*

In his first motion, the defendant argues that like Section 841(b)(1)(A) and (B), Section 848(b) must be held unconstitutional because the legislative history and statutory structure of Section 848 make clear that Congress intended the factors enumerated in Section 848(b) to be sentencing factors that the judge must decide by a preponderance of the evidence. Defendant argues that the Section 848(b) factors cannot be put to the jury because treating them as elements of the offense would run contrary to the will of Congress. The Court rejects this *Buckland*-type *Apprendi* analysis for the reasons previously stated.

But there is more to defendant's *Apprendi* argument. To convict a defendant of operating a continuing criminal enterprise under Section 848(a) and (c), the government must show that (1) the defendant has committed violations of the federal drug laws, (2) these violations are part of a continuing series of violations, (3) which are undertaken by the defendant in concert with at least five others, (4) with respect to whom the defendant "occupies a position of organizer, a supervisory position, or any other position of management," and (5) the defendant obtains substantial income or resources from the continuing series of violations. 21 U.S.C. § 848(c); *see United States v. Hoyle,* 122 F.3d 48, 50 (D.C.Cir.1997). If the jury finds these elements beyond a reasonable doubt, the defendant faces a minimum sentence of 20 years (30 years if there is a prior felony drug conviction) and a maximum of life in prison. *See* 21 U.S.C.

§ 848(a). Section 848(b), however, requires the court to sentence a defendant convicted of engaging in a continuing criminal enterprise to a mandatory term of life imprisonment if certain additional facts are proven, specifically if:

> (1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; *and*
>
> (2)(A) the violation referred to in [21 U.S.C. § 848(c)(1) ] involved at least 300 times the quantity of a substance described in [21 U.S.C. § 841(b)(1)(B) ], *or*
>
> (B) the enterprise, or any other enterprise in which the defendant was the principal *or* one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in [21 U.S.C. § 841(b)(1)(B) ].

21 U.S.C. § 848(b) (emphasis added). The question under *Apprendi* is whether Section 848(b), which carries a mandatory life sentence, sets out a separate offense that must be separately charged and proved to a jury beyond a reasonable doubt or whether it contains only sentencing factors that may be considered by the Court after conviction and determined by a preponderance of the evidence.

■ The Court in *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. at 490, 120 S.Ct. 2348. Stated another way, *Apprendi* stands for the proposition that when a fact increases the defendant's punishment beyond the maximum allowed by

a statute, that fact is treated like an element of the offense and must be proved to the jury beyond a reasonable doubt. Defendant argues that the requirement that a mandatory life sentence be imposed after conviction implicates the protections of *Apprendi.*

In support of his argument, defendant cites cases from the Sixth Circuit holding that *Apprendi* applies to facts increasing the mandatory minimum term of imprisonment. *See United States v. Ramirez,* 242 F.3d 348, 351 (6th Cir.2001); *United States v. Flowal,* 234 F.3d 932, 937 (6th Cir.2000). In those cases, the Sixth Circuit held that there is a "substantial difference in penalty based on drug quantity when a statute moves the maximum penalty of 20 or 30 years to life to a mandatory minimum penalty of the same length," that is, when instead of setting the maximum sentence *available,* the statute *requires* the judge to impose a mandatory 20–year, 30–year or life sentence. *United States v. Ramirez,* 242 F.3d at 351. Similarly, the difference between a statute *permitting* a sentencing judge to *consider* life imprisonment and one *requiring* the judge to impose it is significant because once the trial judge makes a determination as to the weight of the drugs or other facts that trigger the mandatory life provision of the statute, that judicial determination takes any discretion the judge would otherwise have to impose a sentence below life. *See United States v. Flowal,* 234 F.3d at 937.

The view of the Sixth Circuit is consistent with Justice Thomas's concurring opinion in *Apprendi* in which he wrote: "What matters is the way by which a fact enters into the sentence. If a fact is by law the basis for imposing or increasing punishment—for establishing or increasing the prosecution's entitlement—it is an element." *Apprendi v. New Jersey,* 530 U.S.

at 521, 120 S.Ct. 2348 (Thomas, J., concurring). Justice Thomas went on to state:

> But it is equally true that his expected punishment has increased as a result of the narrowed range and that the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish. The mandatory minimum "entitl[es] the government," ... to more than it would otherwise be entitled (5 to 10 years, rather than 0 to 10 and the risk of a sentence below 5). Thus, the fact triggering the mandatory minimum is part of "the punishment sought to be inflicted," ...; it undoubtably "enters into the punishment" so as to aggravate it, ... and is an "ac[t] to which the law affixes ... punishment."

*Id.* at 522, 120 S.Ct. 2348 (internal citations omitted). Defendant argues that by bringing a charge under Section 848(b) and invoking its mandatory life requirement, the prosecutor is thereby "empowered ... to require the judge to impose a higher punishment than [the judge] might wish" and to which the statute otherwise entitles the government. *Id.* Defendant contends that the factors in Section 848(b) therefore must be treated like elements of the offense that must be proved to the jury beyond a reasonable doubt.

The *express* holding of *Apprendi* does not lead ineluctably to the conclusion reached by the Sixth Circuit, and defendant's position arguably runs up against the Supreme Court's earlier decision in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *McMillan* involved a statute that required the sentencing judge to impose a mandatory sentence of at least five years if the judge concluded by a preponderance of the evidence that the defendant "visibly possessed a firearm" during the commission of certain specified offenses. *Id.* at 81, 106

S.Ct. 2411. The Supreme Court held that the Pennsylvania statute was constitutional because it "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it. . . ." *Id.* at 87–88, 106 S.Ct. 2411. While Justices Thomas and Scalia in *Apprendi* seemed willing to overrule *McMillan*, the other three justices constituting the majority of the Court in *Apprendi* did not go that far, expressly stating that they were not then prepared to revisit the decision in *McMillan*. *See Apprendi v. New Jersey*, 530 U.S. at 487 n. 13, 120 S.Ct. 2348.

In view of *McMillan*, the five other circuits that have addressed the issue disagree with the Sixth Circuit's analysis and conclude that facts that trigger a mandatory minimum sentence do not implicate *Apprendi* so long as the maximum sentence remains the same; in their view, the fact that the sentence is made mandatory in one provision of the statute but not in another is irrelevant. *See United States v. Hill*, 252 F.3d 919, 921–22 (7th Cir.2001); *United States v. Harris*, 243 F.3d 806, 809 (4th Cir.2001); *United States v. Robinson*, 241 F.3d 115, 120–22 (1st Cir.2001); *United States v. Keith*, 230 F.3d 784, 787 (5th Cir.2000); *United States v. Smith*, 223 F.3d 554, 565 (7th Cir.2000); *United States v. Aguayo–Delgado*, 220 F.3d 926, 932 (8th Cir.2000). The Seventh Circuit's opinion in *Smith* is the only one to involve a mandatory life sentence.

It seems to this Court that a mandatory *life* sentence as required under Section 848(b) is a punishment different in kind from the mandatory minimum sentence required by the type of statute at issue in *McMillan* and considered by the various circuits. When a mandatory minimum is involved, the judge's sentencing discretion is decreased but some sentencing discretion remains. By contrast, if the judge makes the necessary findings under Section 848(b), the statute—and the prosecutor's decision to invoke it—takes away all sentencing discretion and compels the judge to conclude that the only available sentence is life in prison. Thus, while *McMillan* is relevant to any *Apprendi* analysis of Section 848(b), *McMillan's* rationale does not, as the Seventh Circuit has suggested, apply "with equal force" to Section 848(b). *See United States v. Smith*, 223 F.3d at 566. Fortunately, the matter need not be resolved in this case.

■ Count Two of the superseding indictment here closely tracks the indictment in *United States v. Tommy Edelin, et al.* In the final paragraph of the CCE count in this case, the grand jury has charged:

Further, the defendant Cornelius Singleton, also known as Chico, also known as Neal, was the principal administrator, organizer, supervisor, and leader of the criminal drug enterprise, which involved the possession with intent to distribute and the distribution of quantities of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, and the quantity of said mixture and substance was 150 kilograms or more.

April 9, 2001 Indictment at 11. Like the CCE count in *Edelin*, the indictment here cites both 21 U.S.C. § 848(a) and 21 U.S.C. § 848(b) in support of the single CCE charge. As in *Edelin*, it specifies the quantity of drugs involved in the criminal drug enterprise—in *Edelin* 1.5 kilograms or more, *see Edelin* Indictment at 33; in this case, 150 kilograms or more. *See* April 9, 2001 Indictment at 11. Furthermore, as in *Edelin*, the indictment in this case intermingles the role in offense lan-

guage of Section 848(c) with the language of Section 848(b): Edelin and Singleton are both described as "principal administrator, organizer, supervisor, and leader" of the continuing criminal enterprise. *See Edelin* Indictment at 33; April 9, 2001 Indictment at 11.

In the *Edelin* case, Judge Lamberth instructed the jury that there were seven separate elements that had to be proved beyond a reasonable doubt for the jury to convict, including two separate elements relating to role in offense—one derived from Section 848(c) and the other from Section 848(b)—and one relating to drug quantity:

> 4. That the defendant occupied a position of organizer, supervisor, or some other position of management with respect to these five or more other persons, either named or unnamed in the indictment;[2]
>
> *   *   *   *   *   *
>
> 6. That the defendant was a principal administrator, organizer, or leader of the enterprise or one of several such principal administrators, organizers, or leaders;[3] and
>
> 7. That the enterprise was involved in the distribution of quantities of a mixture and substance containing a detectable amount of cocaine base, also known as "crack," in an amount of 1.5 kilograms or more.

Furthermore, while the jury verdict form in *Edelin* did not ask the jury to make specific findings regarding Tommy Edelin's role in the offense, it did ask the jury to make a specific finding regarding the amount of cocaine base involved in the

continuing criminal enterprise. *See Edelin* Jury Verdict Form at 4.

As defendant points out, and as the *Edelin* indictment and jury instructions corroborate, it is the practice in this jurisdiction to charge in the indictment and to instruct the jury that Section 848(b) drug quantity and leadership role are elements of the Section 848 offense and must be proved beyond a reasonable doubt. Certainly the indictment as drafted in this case treats both drug quantity and leadership role as elements of the offense. Defendant also states—and the government nowhere disputes this assertion—that it has been the practice in this jurisdiction to require the jury to memorialize its decisions with respect to both CCE drug quantity and leadership role on a special verdict form. *See* Defendant Singleton's Memorandum in Support of Motion to Hold 21 U.S.C. §§ 841(b)(1)(A) and (B) and 21 U.S.C. § 848(b) Unconstitutional on Their Face at 2. While the *Edelin* verdict form did not require a specific finding on leadership role, the court of appeals' decision in *Fields I* makes plain that both drug quantity and leadership role have historically been presented to the jury in CCE cases even before *Apprendi. See United States v. Fields*, 242 F.3d at 396 (special verdict form required specific finding by jury regarding drug quantity on CCE count); *id.* at 398 (issue of leadership role submitted to jury on CCE count but not on RICO and drug conspiracy counts). In *Fields* the jury was deadlocked on the CCE count. *See id.* at 398. Thus, the court in *Fields II* addressed the remaining counts in the indictment and held only that *Apprendi* did not apply to leadership enhancements under the Sentencing Guide-

---

2. This part of the instruction tracks the language of Section 848(c).

3. This part of the instruction tracks the language of Section 848(b), where additional requirements must be proved in order to trigger a mandatory life sentence.

lines. *See United States v. Fields*, 251 F.3d at 1043–44.

While this Court is inclined towards the view that a mandatory life sentence is a penalty so different in kind from a permissible maximum sentence of up to life that *Apprendi* is implicated, a decision on this issue can be avoided by continuing to follow the practice in this jurisdiction. The jury in this case therefore will be instructed on the Section 848(b) drug quantity and on the Section 848(b) leadership role as if they were elements of the charged CCE offense. A special verdict form will require the jury to indicate whether it has unanimously found each beyond a reasonable doubt. If the jury fails to find any element beyond a reasonable doubt, the defendant will be acquitted of having engaged in a continuing criminal enterprise under Section 848.[4]

### 2. Alleged Improper Charging Of Drug Quantity And Leadership Role

In his second Section 848(b) motion, the defendant argues that the indictment should be dismissed because it fails properly to charge that any particular one of the underlying predicate acts involved at least 300 times the drug quantity specified by Section 841(b)(1)(B)—in this case, 150 kilograms of powder cocaine. *See* 21 U.S.C. § 848(b)(2)(A). The defendant also argues that the indictment is defective because it mischarges the "leadership role" element.

■ The defendant is correct that the indictment's assertion that defendant Singleton was a "principal administrator, organizer, supervisor, and leader of the criminal drug enterprise" intermingles the elements of Section 848(a), as defined in Section 848(c) (a person who occupies "a position of organizer, a supervisory position, or any other position of management") with the language of Section 848(b) ("the principal administrator, organizer, or leader of the enterprise"). As indicated above, however, the matter is moot so long as the jury is instructed, as it was in *Edelin*, that these two leadership elements constitute two separate "elements" that must be proved beyond a reasonable doubt, and so long as the jury is asked in a special verdict form specifically to find each unanimously beyond a reasonable doubt.

■ The second issue raised by the defendant relates to the indictment's allegation that "the criminal drug enterprise . . . involved the possession [of] . . . cocaine," the amount of which was "150 kilograms or more." Defendant Singleton's Memorandum at 6. The defendant argues that it is not enough under the plain language of 21 U.S.C. § 848(b) to charge that the continuing criminal enterprise involved the requisite quantity of drugs but it must be alleged that a particular predicate drug violation involved that quantity of drugs. His argument would make sense if Section 848(b)(2)(A)'s cross-reference was to Section 848(c)(2), but it is not; it is to Section 848(c)(1). Indeed, his entire argument is based on the (c)(2) language—"such violation is a part of a continuing series of violations"—rather than on the (c)(1) language—"he violates any provision of this subchapter. . . ." As the government points out, the plain meaning and intent of the statute are to the effect that the drug quantity is defined by the quantities aggregated throughout the life of the enterprise and not by any one single transaction

---

4. Whether a Section 848(a) and (c) charge is a lesser included offense of a Section 848(b) charge is an academic question in view of the way in which the indictment has been drafted. For the government in this case, it is an all or nothing proposition: the defendant will either be convicted of violating Section 848 or acquitted.

or predicate act. *See United States v. Harris,* 959 F.2d 246, 257 (D.C.Cir.1992). The Supreme Court's decision in *Richardson v. U.S.,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), does not compel a different conclusion.

There is no defect in the indictment. Defendant's motion to dismiss the Section 848(b) allegation from the indictment therefore will be denied. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

### ORDER

Upon consideration of defendant Singleton's motion to hold 21 U.S.C. § 841(b)(1)(A) and (B) and 21 U.S.C. § 848(b) unconstitutional on their face and on his separate motion to dismiss the Section 848(b) allegation from the indictment, the government's oppositions, the defendant's replies, the arguments of counsel and the entire record herein, and for the reasons set forth in an Opinion issued this same day, it is hereby

ORDERED that the motion to hold 21 U.S.C. § 841(b)(1)(A) and (B) and 21 U.S.C. § 848(b) unconstitutional on their face is DENIED; and it is

FURTHER ORDERED that the motion to dismiss the Section 848(b) allegation from the indictment is DENIED.

SO ORDERED.