**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0097n.06
Filed: February 5, 2009

**No. 08-5022**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| v. | ) | |
| | ) | O P I N I O N |
| GREGORIO BASULTO-PULIDO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MOORE, CLAY, and KETHLEDGE, Circuit Judges.

CLAY, Circuit Judge. Defendant, Gregorio Basulto-Pulido ("Basulto-Pulido"), challenges the substantive reasonableness of the 70-month sentence imposed by the district court after he pled guilty to illegally reentering the United States after previously being deported as an aggravated felon, a criminal offense under 8 U.S.C. § 1326(b). Primarily, Basulto-Pulido argues that the district court failed to consider and take into account that the advisory sentencing range recommended under the Sentencing Guidelines, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), improperly "double counts" his prior convictions by increasing both the base offense level and his criminal history category.

For the reasons set forth below, we find no merit in Basulto-Pulido's arguments, and thus hereby **AFFIRM** the sentence imposed by the district court.

**BACKGROUND**

Basulto-Pulido, a native and citizen of Mexico, first illegally entered the United States sometime in the mid-1980s. After arriving in the United States, Basulto-Pulido settled in Texas, where he lived until June 1992, when he was deported back to Mexico. Prior to being deported, Basulto-Pulido was convicted of or pled guilty to numerous state criminal charges, including resisting arrest, assault, two incidents of driving while intoxicated, two incidents of criminal mischief, making terroristic threats,[1] and attempted aggravated sexual assault of a child. (J.A. 56-58.) In February 1991, after pleading guilty to attempted aggravated assault of his minor step-daughter, Basulto-Pulido was sentenced to ten years suspended sentence and ten years probation. (J.A. 58.) Approximately one year later, Basulto-Pulido was again arrested for driving while intoxicated, his second such offense. (J.A. 58.) After pleading guilty to that charge, Basulto-Pulido's probation for his attempted-sexual-assault conviction was revoked, and he was subsequently deported. (J.A. 58.)

Shortly after being deported, Basulto-Pulido illegally returned to the United States. Basulto-Pulido claims that he reentered the Untied States to reunite with his wife, who is a United States citizen, and his citizen children. Within a year of returning to the United States, Basulto-Pulido was

---

[1]The Presentence Investigation Report indicates that Basulto-Pulido was arrested for making "terrositic threats" on June 26, 1988 in Robertson County, Texas, and that he was sentenced in August of 1988 to "3 days of custody" for that offense. The Report notes, however, that "no further information was available about this offense."

arrested and pled guilty to resisting arrest. (J.A. 59.) Basulto-Pulido was sentenced to 180 days in state custody for that offense. (J.A. 59.) Since that offense, Basulto-Pulido has not been arrested or charged with any other criminal conduct. In fact, Basulto-Pulido claims that, over the last fifteen years since he illegally returned to the United States, he has worked hard to become a productive member of society and a responsible father and husband.

In July of 2007, immigration authorities discovered that Basulto-Pulido had returned to the United States when he was arrested following a traffic stop. Basulto-Pulido subsequently pled guilty to illegally reentering the United States after previously being deported as an aggravated felon. Based on the offense charged and Basulto-Pulido's criminal history, the Probation Department's Presentence Investigation Report yielded an advisory Guidelines range of 70 to 87 months imprisonment. To arrive at this range, the probation officer assessed a total offense level of 21 and a category V criminal history. (J.A. 54-55.) In calculating the total offense level, the probation officer assessed, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), a 16-level increase in the base offense level because Basulto-Pulido had previously been deported following an aggravated felony conviction, but also noted that Basulto-Pulido was eligible for a 3-level reduction in his total offense level because he demonstrated acceptance of responsibility. (J.A. 54-55.)

Although Basulto-Pulido did not object to the Presentence Report's calculation of the advisory Guidelines range, he did raise three arguments in support of a downward variance in a sentencing memorandum submitted to the court prior to the sentencing hearing. First, Basulto-

Pulido argued that a downward variance was necessary to mitigate the "double-counting effect" of

§ 2L1.2's 16-level increase in illegal reentry cases. Second, Basulto-Pulido argued that his law-

abiding conduct over the past fifteen years also supported a downward variance. Finally, Basulto-

Pulido pointed to his "remarkable assimilation in his adopted country" and his "sympathetic motive"

for reentering the country, namely to reunite with his citizen wife. (J.A. 21-22.)

At his sentencing hearing, counsel for Basulto-Pulido briefly summarized the arguments

raised in support of a downward variance. The government acknowledged that the district court

should consider these factors, but suggested that a sentence at the low end of the applicable

Guidelines range was appropriate. After considering both parties' arguments, the district judge

sentenced Basulto-Pulido to 70 months imprisonment, the lowest end of the advisory Guidelines

range. This timely appeal followed.

## ANALYSIS

### *Standard of Review*

"Post-*Booker*, we review a district court's sentencing determination, 'under a deferential

abuse-of-discretion standard,' for reasonableness[.]" *United States v. Bolds*, 511 F.3d 568, 578 (6th

Cir. 2007) (quoting *Gall v. United States*, ___ U.S. ___, 128 S. Ct. 586, 591 (2007)); *see also Rita*

*v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2459 (2007); *United States v. Webb*, 403 F.3d 373,

383 (6th Cir. 2005).[2] This standard applies "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range[.]" *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *Gall*, 128 S. Ct. at 594-95).

***Substantive Reasonableness***

The reasonableness of a district court's sentence "has both substantive and procedural components." *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007). Thus, the Court's "reasonableness review requires [inquiry] into both 'the length of the sentence' and 'the factors evaluated and the procedures employed by the district court in reaching its sentencing determination.'" *United States v. Liou*, 491 F.3d 334, 338 (6th Cir. 2007) (quoting *Webb*, 403 F.3d at 383).

In *Webb*, the Court noted that "[a] district judge act[s] unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent § 3553(a) factors, or giving an unreasonable amount of weight to any pertinent factor." 403 F.3d at 385. The Court's decision in *Webb*, however, did not distinguish between "procedural" and "substantive" reasonableness. Consequently, the procedural and substantive components of the Court's reasonableness inquiry "appear to overlap." *Jones*, 489 F.3d at 252 n.3. Our subsequent

---

[2]In *Webb*, the case in which this Court first articulated the proper scope of reasonableness review post-*Booker*, the Court did not distinguish between "procedural" and "substantive" reasonableness. That distinction was not made explicit until *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006).

decisions applying *Webb*, however, make clear that the substantive reasonableness inquiry turns primarily on whether "the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008) ("The touchstone of our [substantive reasonableness] review is whether the length of the sentence is reasonable in light of the § 3553(a) factors."). Under 18 U.S.C. § 3553(a), we must examine whether the length of the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing as set forth by Congress in that provision. *See Jones*, 498 F.3d at 340; *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006).

In conducting this inquiry, we apply a "rebuttable presumption of reasonableness" to sentences falling within the applicable Guidelines range. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Gall*, 128 S. Ct. at 597 ("If the sentence is within the Guidelines range, the appellate court may . . . apply a presumption of reasonableness." (citing *Rita*, 127 S. Ct. at 2462)). A within-Guidelines sentence, however, is not "'*per-se* reasonable.'" *United States v. Richardson*, 437 F.3d 550, 554 n.2 (6th Cir. 2007) (quoting *Webb*, 403 F.3d at 385 n.9).

*Analysis*

Basulto-Pulido argues that the sentencing range recommended under the Guidelines unfairly double counts his prior felony conviction by tripling his offense level *and* increasing his criminal history score. Basulto-Pulido also argues that the district court overlooked other evidence—including his law-abiding conduct over the past fifteen years, his "remarkable

assimilation in his adopted country," and his "sympathetic motive" for reentering the country (J.A. 21-22)—that might "lend some support for a reduced sentence." *Jones*, 489 F.3d at 253. Basulto-Pulido claims that, because of these errors, the length of his sentence is "greater than necessary" to achieve the sentencing factors identified by Congress in 18 U.S.C. § 3553(a)(2).[3]

After considering Basulto-Pulido's claims and reviewing the record, we conclude that the sentencing judge did not abuse his discretion by imposing a 70-month, within-Guidelines sentence in this case. The transcript of the sentencing hearing demonstrates that the district judge engaged in a thoughtful, if not detailed, review of the § 3553(a) factors as they applied to Basulto-Pulido's case. Agreeing that certain factors weighed in Basulto-Pulido's favor, the district judge explicitly noted and took into account Basulto-Pulido's "cultural assimilation" and the non-violent nature of his 2007 traffic offense. (J.A. 39-41.) The district judge also explicitly acknowledged Basulto-Pulido's "efforts at working and supporting his family," noting that these efforts were "admirable" and "weigh in his favor." (J.A. 39.) Moreover, the district judge noted that, at the time of his arrest, Basulto-Pulido "wasn't otherwise engaged in any serious criminal conduct." (J.A. 40.)

---

[3]Throughout his brief, Basulto-Pulido frames his argument as a substantive reasonableness challenge only. Although Basulto-Pulido does not raise a distinct procedural unreasonableness objection, he does argue that the sentencing judge "did not grapple with, or even address the validity of, [his] two central arguments in favor of a variance." Def. Br. at 8. Because Basulto-Pulido does not articulate this as a separate claim, however, the argument has been waived. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("[A party's] failure to raise an argument in his appellate brief constitutes a waiver of the argument on appeal." (citing *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003))). In addition, because Basulto-Pulido failed to preserve this claim after the court announced his sentence, the claim may be forfeited. *See United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008).

As the district court noted, however, these favorable elements were offset by Basulto-Pulido's "lengthy criminal history," which only heightened the need to promote "respect for the law" and to "provid[e] just punishment." (J.A. 39-40.) Indeed, the "[m]ost significant basis" for the sentence imposed by the district judge was the violent nature of Basulto-Pulido's prior offenses, including "acts of violence and [an] attempted sexual offense against a child." (J.A. 40, 39.) The court also discounted Basulto-Pulido's law-abiding conduct over the past fifteen years because the offense of illegal reentry by a previously deported felon "in essence is considered a continuing offense." (J.A. 40.) The court also took into account "the dispatch with which the defendant reentered the United States after previously being deported," concluding that such conduct "indicates a need for [both] specific deterrence and general deterrence." (J.A. 40-41.)

Taking all of these factors into consideration, the sentencing court determined that a 70-month sentence, which was at the low end of the advisory Guidelines range, was appropriate. There is no indication that the court gave undue consideration to any single element, or that the court randomly selected the sentence. On the contrary, the sentencing transcript evinces that the district court determined that the length of Basulto-Pulido's sentence was appropriate in light of the nature of his prior offenses when balanced against his assimilation and conduct since his reentry.

Despite this clear record, Basulto-Pulido argues that his sentence is substantively unreasonable because the district judge failed to mitigate the unnecessarily harsh effects of § 2L1.2's "double-counting" requirement. "'Impermissible 'double counting' occurs when precisely the same

aspect of a defendant's conduct factors into his sentence in two separate ways.'" *United States v. Levy*, 250 F.3d 1015, 1017 (6th Cir. 2001) (quoting *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999)). We have expressly recognized, however, that "not all instances of double counting are impermissible." *Farrow*, 198 F.3d at 194. For instance, "we allow double counting where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Id.*; *see also United States v. Thompson*, 515 F.3d 556, 563 (6th Cir. 2008). Applying that rationale, this Court has rejected the notion that a sentencing range is unreasonable simply because the pertinent Guidelines endorse dual consideration of a prior conviction under § 2L1.2. *See United States v. Hernandez-Fierros*, 453 F.3d 309, 312-13 (6th Cir. 2006). The *Hernandez-Fierros* Court reasoned that, although a defendant charged with illegally reentering the Untied States after being deported for a violent felony is subject to an increase in both the base offense level and his criminal history category, those increases are based on separate and distinct characteristics of the relevant prior convictions. *Id.* Because Basulto-Pulido has articulated no basis for distinguishing this controlling authority, we must reject Basulto-Pulido's double-counting argument.

Nor does the record support finding error in Basulto-Pulido's sentence on any other ground. In fact, the record makes clear that the district judge acknowledged each of the three arguments raised by Basulto-Pulido, including Basulto-Pulido's § 2L1.2 argument, and that the court evaluated those issues in light of the sentencing factors set forth in § 3553(a). Nothing in the record suggests that the district judge latched onto any single element, such as the violent nature of Basulto-Pulido's prior convictions, in determining the appropriate sentence. Nor does the record suggest that the

district judge rejected any of the Basulto-Pulido's arguments as inappropriate sentencing considerations. On the contrary, the district judge noted all of Basulto-Pulido's arguments and expressly considered several factors that weighed in Basulto-Pulido's favor, but balanced those factors against other elements that supported a harsher sentence.

Taking all of the relevant factors into account, the sentencing judge determined that a within-Guidelines sentence, but one at the low end of the spectrum, was appropriate. Because within-Guidelines sentences are presumptively reasonable, *Williams*, 436 F.3d at 708, Basulto-Pulido bears the burden of demonstrating that the district court's sentence was greater than necessary to achieve the goals Congress set forth in § 3553. Basulto-Pulido fails to carry that burden. Indeed, the 70-month sentence imposed by the district court is *within* the 57-71 month sentencing range that the Guidelines would have yielded had the court accepted Basulto-Pulido's argument and eliminated the 3 additional criminal history points for his prior aggravated assault conviction.

On this record, we are not convinced that Basulto-Pulido's sentence is substantively unreasonable. Whether the district court *could have* found these factors to support a downward variance is irrelevant; the question is whether Basulto-Pulido can demonstrate that it was *unreasonable* for the district court to decline to do so. Basulto-Pulido has not satisfied that burden.

**CONCLUSION**

Because the record evinces that the district court considered all of the arguments raised by Basulto-Pulido in support of his request for a downward variance from the advisory Guidelines range, and that the district court took these issues into account in imposing sentence, we conclude that Basulto-Pulido's arguments are without merit and, therfore, **AFFIRM** the 70-month sentence imposed by the district court.