**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name:  19a0384n.06

Case No. 18-5785

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 29, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff – Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| TIMOTHY W. THOMAS, | ) | TENNESSEE |
| Defendant – Appellant. | ) | |

**BEFORE:  ROGERS, BUSH, and LARSEN, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.**  Timothy Thomas operated a health insurance sales company in Tennessee.  Thomas pled guilty to one count of mail fraud relating to misrepresentations he made to his customers, in violation of 18 U.S.C. § 1341, and one count of criminal contempt relating to his willful violation of a court order freezing his assets, in violation of 18 U.S.C. § 401(3).  The district court sentenced Thomas to 66 months' incarceration.  Thomas appeals, arguing that his sentence is substantively unreasonable.  For the reasons that follow, we **AFFIRM**.

From 2007 until 2010, Thomas operated United Benefits of America, LLC ("UBA"), which marketed "limited benefit" health plans on behalf of third parties.  These limited benefit plans were health insurance policies providing non-comprehensive coverage that would pay a set amount for specific medical services; for example, a policy might pay a certain amount per day for a hospital

stay or a certain amount towards a visit to a doctor. Importantly, these plans differed significantly from traditional health insurance—whereas traditional medical insurance covers the entirety of the costs associated with medical care, minus certain adjustments (for example, co-pays and deductibles), the limited benefit plans sold by Thomas covered none of the costs associated with medical care, except that the policy-holder was entitled to a flat amount, depending on the nature of the medical care. The practical difference between the two types of policies is clear: as the costs associated with a medical event increase, traditional medical insurance pays more, while limited benefit plans do not.

At Thomas's direction, UBA employees used sales scripts and marketing materials containing half-truths and material omissions designed to lead potential customers to believe that the limited benefit plans sold by UBA functioned in substantially the same manner as traditional health insurance. In addition to the officially approved materials, UBA salespeople routinely made misrepresentations and omissions designed to make customers believe that they were buying traditional health insurance. Moreover, the salespeople most rewarded by UBA were those making the most frequent and egregious misrepresentations to potential customers.

Unsurprisingly, UBA customers complained to the Better Business Bureau, which assigned UBA an "F" rating. Thomas responded by changing the company's name to U.S. Benefits LLC ("U.S. Benefits") and falsely telling the Better Business Bureau that U.S. Benefits was unrelated to UBA.

Finally, the Federal Trade Commission and the State of Tennessee filed suit against Thomas and U.S. Benefits in federal court. On August 4, 2010, the district judge in that suit entered a restraining order freezing Thomas's assets. On the morning of August 5, Thomas directed his financial advisor to deposit two checks, totaling $411,000, into Thomas's account.

Later that morning, a receiver appointed by the district court arrived at UBA and read to Thomas the order freezing his assets. Thomas then reversed course with his broker, telling the broker that instead of depositing funds, he now wanted to withdraw all the funds in his now-frozen accounts.

On August 6, the very next day, Thomas met with a friend, told her that his accounts had been temporarily frozen due to a "misunderstanding," and asked whether she would allow him to deposit checks into her account so that he could access the money. Thomas's friend allowed this and set up a separate account for Thomas. Thomas successfully withdrew $8,000 from his friend's account before the bank became aware of the restraining order and froze that account also.

Roughly two years later, on October 29, 2014, Thomas was indicted on 15 counts, including wire fraud, mail fraud, money laundering, and criminal contempt. On March 7, 2018, Thomas pled guilty to a single charge of mail fraud and a single charge of criminal contempt. At sentencing, the district court found that Thomas had a criminal history category of I and a net offense level of 26, resulting in a Guidelines range of 63 to 78 months. After explaining its weighing of the factors in 18 U.S.C. § 3553(a), the district court sentenced Thomas to 36 months for the mail fraud and 30 months for the criminal contempt, to run consecutively, and imposed restitution in the amount of $4,549,872.88 and a forfeiture judgment in the amount of $1,500,000. Thomas now appeals the substantive reasonableness of the imprisonment portion of that sentence.

"We review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Robinson*, 813 F.3d 251, 264 (6th Cir. 2016) (citing *United States v. Smith*, 516 F.3d 473, 477–78 (6th Cir. 2008)). A sentence within the Guidelines range is afforded a presumption of reasonableness on appellate review. *See United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc). This "presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing

Commission will have reached the *same* conclusion as to the proper sentence in the particular case." *Rita v. United States*, 551 U.S. 338, 347 (2007).

For a sentence to be substantively reasonable, "it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a). *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citation and internal quotation marks omitted). In other words, substantive reasonableness focuses on whether "a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). "A sentence may indeed be substantively unreasonable if a district court places too much weight on any one factor." *United States v. Peake-Wright*, 567 F. App'x 355, 358 (6th Cir. 2014) (citing *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)). But when a defendant merely asks us to "balance the [§ 3553(a)] factors *differently* than the district court did," such a request "is simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006); *accord United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

Thomas appeals the district court's decision to impose the 36- and 30-month sentences consecutively, instead of concurrently.[1] Thomas raises two arguments for why his sentence is substantively unreasonable: (1) that the district court considered only a single § 3553(a) factor

---

[1] The government argues that we ought to review only the aggregate sentence—in this case, 66 months—for substantial reasonableness, not the decision to impose consecutive penalties for separate counts. In cases such as this, where there are no undischarged terms of imprisonment, that may be the correct procedure. *See Dean v. United States*, 137 S. Ct. 1170, 1175–76 (2017) (discussing § 3553(a) factors in relation to "an aggregate prison term comprising separate sentences for multiple counts of conviction"). Because Thomas loses even under his preferred formulation of the question, we assume, without so holding, that it is appropriate for us to review the district court's decision to apply Thomas's sentences consecutively for substantive reasonableness.

when imposing the sentence for contempt consecutively; and (2) that the district court placed too much weight on the severity of the criminal contempt in light of mitigating circumstances.

As a preliminary matter, we note that while "we have repeatedly stated that a sentence is substantively unreasonable if the district court fails to consider relevant factors . . . that notion is derived from our decision in *United States v. Webb*, 403 F.3d 373 (6th Cir. 2005), which did not distinguish between substantive and procedural reasonableness." *United States v. Brissett*, 375 F. App'x 473, 476 (6th Cir. 2010). Since *Webb*, however, we have conceptualized substantive reasonableness as concerning whether "the length of the sentence is reasonable in light of the § 3553(a) factors," not whether the district court evaluated those factors. *Ibid.* (citing *United States v. Basulto-Pulido*, 309 F. App'x 945, 948 (6th Cir. 2009)); *see also United States v. Delarosa*, 575 F. App'x 571, 581 (6th Cir. 2014) (collecting cases). And this is a distinction with a difference: objections to procedural reasonableness not raised below are reviewed for plain error, not abuse of discretion. *See Vonner*, 516 F.3d at 385.

Regardless, Thomas complains not that the district court failed to consider each of the § 3553(a) factors during sentencing, but only that the district court did not explain how those factors justified the decision to impose the sentences consecutively instead of concurrently. However, when a district court has already conducted a § 3553(a) analysis—which Thomas concedes that the district court did—"[r]equiring district courts to conduct a separate Section 3553(a) analysis for the concurrent or consecutive nature of the sentence would be repetitious and unwarranted." *United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009). Thomas's argument on this point must therefore fail.

Thomas's second argument—that the § 3553(a) factors required the imposition of concurrent sentences—fares no better. Thomas argues that the district court placed

disproportionate emphasis on the severity of the crime and insufficient emphasis on the following four mitigating factors: (1) that he has cancer; (2) that he does not have a lengthy criminal history; (3) that his violation of the order freezing his assets involved personal funds and not UBA funds; and (4) that Thomas's violation of the court's order was not so flagrant as to warrant a consecutive sentence for criminal contempt.[2]

During the sentencing hearing, the district court addressed a motion by Thomas to continue sentencing based on his cancer treatments, and the district court accepted extensive evidence concerning the nature and extent of those treatments. Although it ultimately denied the motion, the district court said that "given the nature of the crime, which is a nonviolent crime, I think the defendant ought to have the option to be able to pursue treatment in a private means" and postponed the date on which Thomas needed to report for the execution of his sentence so that Thomas could pursue the treatment of his choice. Hr'g Tr., 14–15, July 2, 2018. The district court even suggested that "if there is some other mode of treatment that's elected, such as that proton beam therapy, and that is yielding some results that might be continued over time, we can consider whether that report date ought to be extended" again. *Id.* at 15. Not only did the district court consider Thomas's medical condition, then, Thomas also significantly benefited from that consideration.

---

[2] Thomas also suggests that the restitution order precludes a consecutive sentence, citing *United States v. Hilburn*, 625 F.2d 1177 (5th Cir. 1980) for the proposition that 18 U.S.C. § 401 provides that a court may not both fine and imprison a contemnor for a single act of criminal contempt. Thomas's analysis suffers from three deficiencies. First, despite Thomas's suggestion otherwise, *Hilburn* was decided by the Fifth Circuit, not the Sixth, and it therefore does not bind this panel. *See United States v. Carney*, 387 F.3d 436, 444 n.7 (6th Cir. 2004) ("[T]he Sixth Circuit is not bound by *stare decisis* to adhere to the prior ruling of any sister circuit . . . ."). Second, the wording of the relevant statute has changed in the thirty-nine years between *Hilburn* and now: specifically, in 2002, Congress amended § 401 such that in cases of criminal contempt, courts "shall have power to punish by fine or imprisonment, *or both*." 18 U.S.C. § 401 (emphasis added). Finally, as the sentencing transcript makes clear, and as is suggested by the very meaning of the term "restitution," the restitution order relates to Thomas's mail fraud, not his criminal contempt.

The district court also addressed Thomas's criminal history, finding that although he had a criminal history category of I, testimony had shown that Thomas continued to engage in "frank misrepresentation to promote and commit further misdeeds," even well after having been indicted. *Id.* at 80–81. Far from failing to accord weight to Thomas's criminal history, the district court found that because of Thomas's misdeeds, "the factor of protecting the public is one that weighs heavy in the ultimate calculation of a sentence in this case." *Id.* at 81.

Although the district court did not discuss whether Thomas's violation of the court order freezing his assets involved personal funds and not UBA funds, Thomas does not explain why this fact would make any difference. The order specifically prohibited Thomas from "transferring, liquidating, converting, dissipating, disbursing, assigning, spending, withdrawing, or otherwise disposing of *any* funds" that he owned or controlled, and was therefore not limited to UBA funds.

Finally, Thomas suggests that his violation of the court order freezing his assets was not flagrant, and that the district court should have weighed this factor as a "mitigating circumstance in this case." However, the record does not support Thomas's characterization of the violation. Thomas asked a friend to deposit three checks totaling more than $500,000 into the friend's personal account so that Thomas could access the money, despite the receiver's explaining to Thomas a day earlier that "all assets belonging to him, his wife, or United Benefits had been frozen" by an order of the court. The district court responded by finding that Thomas had "willfully and flagrantly violated the Court's Order," and this finding led the Government to charge Thomas with criminal contempt and Thomas to plead guilty to that very charge. Thomas's guilty plea distinguishes this case from *United States v. Kelsey-Hayes Co.*, 476 F.2d 265 (6th Cir. 1973), which involved a district court's dismissal of a criminal contempt charge where the defendants denied their guilt.

7

In short, Thomas is asking that we balance the § 3553(a) factors differently than did the district court. Having reviewed the totality of the circumstances in light of the presumption that a within-Guidelines sentence is substantively reasonable, we find that the district court did not abuse its discretion in sentencing Thomas to consecutive sentences. Accordingly, we **AFFIRM**.